[Civ. No. 12028.  First Dist., Div. One.  May 25, 1942.]

EMILY N. ZEIGLER, Appellant, v. HARRY E. BONNELL, Respondent.

Alfred Barstow, Dryer, Richards & Page and William A. Page for Appellant.

Karl W. Marks for Respondent.

PETERS, P. J.—Plaintiff appeals from a judgment in a quiet title action determining that she and defendant own, as tenants in common, undivided half interests in a designated parcel of real property. On this appeal plaintiff urges that she owns the parcel free and clear of any claim of defendant. Although given ample opportunity to do so, respondent has filed no brief on this appeal, nor has he or his counsel suggested any theory upon which the judgment may be sustained. Under such circumstances, we are entitled to accept the facts as stated in appellant's brief (Rule V, § 1, of the Rules of the Supreme Court and District Courts of Appeal; *Pendergrass* v. *Axx,* 111 Cal. App. 478 [295 Pac. 896] ; *Frank Graves S. etc. Co.* v. *Orange County Bond & Mtg. Corp.,* 111 Cal. App. 475 [295 Pac. 859]), and are under no duty to seek out points of law in support of the judgment. We are entitled to assume that respondent has abandoned any attempt to support the judgment. (*Duisenberg-Wichman & Co.* v. *Johnson,* 123 Cal. App. 125 [10 P. (2d) 1010] ; *Doud* v. *Jackson,* 102 Cal. App. 213 [283 Pac. 107].) This shirking of responsibility on the part of respondent and his counsel should be strongly condemned, imposing as it does an unfair and improper burden on the court. (*Mosher* v. *Johnson,* 51 Cal. App. 114 [196 Pac. 84] ; *Lapique* v. *Walsh,* 51 Cal. App. 191 [196 Pac. 512].)

The facts of this case are as follows: In January, 1935, William B. Nash, and his daughter, appellant herein, took title to the parcel of real property here involved as joint tenants. In July of 1935 respondent sued William B. Nash to recover a balance due on a promissory note executed by Nash, and attached the real property. In December, 1935,

respondent secured judgment against Nash for $1,413.86. An abstract of the judgment was recorded, and the judgment thereby became a lien on Nash's interest in the property. (§ 674, Code of Civ. Proc.) A writ of execution was issued but no levy was made under the writ. Until a levy, property is, of course, not affected by an execution. (§ 688, Code of Civ. Proc.) Nash died February 11, 1939. After his death, and on December 22, 1939, respondent caused a new writ of execution to be issued against the interest of Nash, and in January of 1940 respondent purported to purchase the interest of Nash at the execution sale in full satisfaction of the judgment. On these facts the trial court determined that appellant and respondent each own an undivided one-half interest in the property as tenants in common. It is the theory of appellant that, upon the death of her father in February of 1939, the property became hers by right of survivorship, free of the judgment lien against the interest of the deceased joint tenant.

The legal proposition thus presented can be stated as follows: Where real property is held by joint tenants, one of whom is a judgment debtor, and the judgment debtor dies prior to a levy of execution but after an abstract of the judgment has been recorded, and a levy of execution is made after the death of the judgment debtor against the interest of the debtor, does the purchaser at the execution sale secure any rights in the property, or does the surviving joint tenant take the entire property free and clear of the lien of the judgment?

It is well settled in this and other states that, while all joint tenants are alive, execution may be had upon the interest of one of the joint tenants, and that upon the purchase of the interest of that joint tenant at execution sale the joint tenancy is severed and the purchaser and the other joint tenant or tenants become tenants in common. (See cases collected and commented on in 111 A. L. R. 171; *Pepin* v. *Stricklin,* 114 Cal. App. 32 [299 Pac. 557] ; *Hilborn* v. *Soale,* 44 Cal. App. 115 [185 Pac. 982].) The question, in the present case, is whether a judgment lien on the interest of one joint tenant prior to execution severs the joint tenancy. We are of the opinion that it does not.

The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. The surviving joint tenant does not secure that right from

the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. (*Green* v. *Skinner,* 185 Cal. 435 [197 Pac. 60].) ▮ While both joint tenants are alive each has a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. ▮ The judgment lien of respondent could attach only to the interest of his debtor, William B. Nash. That interest terminated upon Nash's death. After his death there was no interest to levy upon. Although the title of the execution purchaser dates back to the date of his lien, that doctrine only applies when the rights of innocent third parties have not intervened. Here the rights of the surviving joint tenant intervened between the date of the lien and the date of the sale. On the latter date the deceased joint tenant had no interest in the property, and his judgment creditor has no greater rights.

The exact problem here involved is the subject of an annotation in 111 A. L. R. 171. It is there pointed out that what little authority exists on the question is to the effect that upon the death of a joint tenant who is also a judgment debtor, the surviving joint tenant takes free of the judgment lien. In *Musa* v. *Segelke & Kohlhaus Co.,* 224 Wis. 432 [272 N. W. 657, 111 A. L. R. 168], to which case the annotation is appended, the problem is fully discussed. The facts of that case are identical with those of the instant case. After holding that the lien of the judgment could only attach to whatever interest the judgment debtor had in the property, the court stated (111 A. L. R. at p. 170):

". . . upon the death of a joint tenant, there remains no interest or property right in the deceased in the premises held by him in joint tenancy up to the time of his death, in respect to which there can be operative an execution issued after his decease on a judgment against him, unless it can be said that by reason of the mere lien, arising from the docketing thereof, there was an effective severance of the deceased debtor's interest as a joint tenant from the interest of his cotenant, even though no execution was issued or levy made on his joint tenancy interest during the deceased's lifetime. Notwithstanding the diligence of counsel and our efforts, no precedent has been found to the effect that an effective severance of a joint tenancy occurs by reason of merely the lien which exists as the result of the docketing of a judgment. . . .

"On the other hand, in *People's Trust & Sav. Bank* v. *Haas,* 328 Ill. 468, 160 N. E. 85, 86, the court, in holding that the lien of the judgment against the interest of a deceased joint tenant was extinguished by his death, and that a surviving joint tenant, Emma L. Horney, became the sole owner, said: 'Appellant argues that Field & Co. followed the procedure required by law to perfect a lien on lands not registered, and that what it did operated to sever the joint tenancy of Samuel E. and Emma L. Horney; that the filing of the transcript of the judgment is analogous to filing a contract of purchase for record prior to a transfer of the property. We cannot agree to that proposition. Nothing was done by the Horneys or any one else prior to Samuel's death to sever the joint tenancy. By law the fee vested in Emma, as survivor of the joint tenants, upon Samuel's death, and we are of opinion the court did not err in rendering the decree.' That case is cited in Thompson on Real Property (1929) section 1717, in support of the statement, 'The mere filing by a creditor of a joint tenant of a memorial of his judgment in the registrar's office prior to the death of the joint tenant, judgment debtor, does not operate as a severance and the survivor takes the whole free from the lien of the judgment, in the absence of any other steps taken by the creditor to sever the title.'

"That proposition seems sound. Therefore the trial court rightly concluded that there was no effective severance of the joint tenancy interests in question during Adam Musa's lifetime; that, consequently, all of his right, title, and interest in the premises became extinguished and ceased upon his death; and that thereupon the entire right, title, and interest therein vested in the plaintiff by virtue of the deed conveying the premises to her and Adam Musa in joint tenancy."

In addition to these authorities see 14 Am. Jur., p. 169, § 107; 2 Tiffany on Real Property (3rd ed.), § 425, at p. 211.

This rule is sound in theory and fair in its operation. When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor, and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien immediately attaches to the entire property. If the judgment debtor is the first to die, the lien is lost. If the creditor sits back to

await this contingency, as respondent did in this case, he assumes the risk of losing his lien.

The judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.